UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| PAULETTE A. GODFREY, | ) | CASE NO.:  4:22-CV-00225-JRA |
| | ) | |
| Plaintiff, | ) | JUDGE:  JOHN ADAMS |
| | ) | |
| vs. | ) | **MOTION FOR JUDGMENT** |
| | ) | **ON THE PLEADINGS** |
| FRANK FUDA, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Now comes Defendant, Frank Fuda, by and through counsel Mazanec, Raskin & Ryder

Co., L.P.A., and hereby moves this Court pursuant to Fed.R.Civ.P. 12(c) for judgment on the

pleadings.  For the reasons set forth in the attached brief, Plaintiff's complaint for First Amendment

retaliation fails to state a claim for which relief may be granted.


Respectfully submitted,

MAZANEC, RASKIN & RYDER CO., L.P.A.

*s/Kathleen M. Minahan*
KATHLEEN M. MINAHAN  (0064989)
100 Franklin's Row
34305 Solon Road
Cleveland, OH  44139
(440) 248-7906
(440) 248-8861 – Fax
Email:   kminahan@mrrlaw.com

*Counsel for Defendant Frank Fuda*

## BRIEF

### I.    THE ALLEGATIONS

Paulette Godfrey is the former clerk to the Board of Trumbull County Commissioners. (Complaint ¶ 4.)  Defendant Frank Fuda is one of the county's three elected commissioners. (Complaint ¶ 3; R.C. § 305.01).  Godfrey's complaint against Commissioner Fuda purports to state a single claim for First Amendment retaliation.  Pleading no operative facts in support of her conclusory allegations, Godfrey claims that Fuda "began to harass, torment, bully, and act abusively toward" her after she replied honestly to a question he posed to her during a public board meeting about whether he had been "hostile or abusive to her in the work place." [1] (Complaint ¶ 5.)  Plaintiff contends that she was constructively discharged as a result of the mistreatment. (Complaint ¶ 6.)

The public meeting at which Godfrey spoke was audio recorded, so the exact content and context of her speech is readily ascertainable. (Exhibit A -- March 24, 2021 Board Meeting at 1:01:32-1:02:27.) [2]  During the board meeting, Commissioner Fuda asked Godfrey, "Paulette, have

---

[1] Commissioner Fuda denies that he mistreated Godfrey as she alleges.

[2] Ordinarily, "[m]atters outside of the pleadings are not to be considered by a court in ruling on a 12(b)(6) motion to dismiss," *Weiner v. Klais & Co., Inc.*, 108 F.3d 86, 88 (6th Cir.1997) (*citing Hammond v. Baldwin*, 866 F.2d 172, 175 (6th Cir.1989)), and a court that considers such matters must first convert the motion to dismiss to one for summary judgment.  However, "[w]hen a court is presented with a Rule 12(b)(6) motion, it may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to [the] defendant's motion to dismiss, so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir.2008).  The audio recording of Godfrey's speech during the March 24, 2021 public board meeting is a public record that can be found at http://commissioners.co.trumbull.oh.us/comm_marmeetings.html. Godfrey's speech was referred to in her complaint and it is central to her claim for First Amendment retaliation.

2

I ever yelled at you?"  Godfrey replied, "Yes, Mr. Fuda, you've yelled at me and on several times you've spoke to me through gritted teeth, like you were so angry with me and I didn't know what I did wrong.  And I told you that when you originally asked me, the same thing.  I'm not… I'm not.  I did tell you, yes, you did yell at me that day. Everybody knows you yelled at me that day.  That, that one day.  Ok, and then I told you that … many times that you've spoke with…to me through gritted teeth like you were so angry at me and…and I didn't know…when I was trying to understand something.  But that's it.  I…I told you that.  I told you that."  Godfrey answered a second question from Fuda who said, "Now, Mrs….Paulette?  Paulette?  You thought that I was angry at you because of the situation with Paula.  You just explained that to me this week, did you not?" Godfrey replied, "Well, yeah.  Then I said that to you because you were not speaking to me.  You were ignoring me and going directly to her.  Now, I…I…I feel like I'm being …"

As plainly evidenced by the recording, Godfrey was <u>not</u> speaking on a matter of public concern; neither was she speaking as a private citizen.  Accordingly, her First Amendment retaliation claim fails as a matter of law.  *See Weisbarth v. Geauga Park Dist.*, 499 F.3d 538, 543–44 (6th Cir. 2007) (affirming dismissal of First Amendment retaliation claim because pleadings made clear that plaintiff spoke pursuant to her official duties rather than as a private citizen).

## II.    LAW AND DISCUSSION

Godfrey's complaint raises a single claim for First Amendment retaliation under 42 U.S.C. § 1983. The First Amendment provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances."  Section 1983 permits a claim for damages against "[e]very person who, under color of [state law], subjects, or causes to be subjected, any citizen of

the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws."  42 U.S.C. § 1983.

According to *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977) and its progeny, a plaintiff "must show that (1) he was participating in a constitutionally protected activity; (2) defendant's action injured plaintiff in a way likely to chill a person of ordinary firmness from further participation in that activity; and (3) in part, plaintiff's constitutionally protected activity motivated defendant's adverse action." *Ctr. for Bio-Ethical Reform, Inc. v. City of Springboro*, 477 F.3d 807, 821 (6th Cir. 2007) (internal citations and quotations omitted).

"[A] public employee's First Amendment rights are narrower than [those of] the citizenry at large." *Mayhew v. Town of Smyrna*, 856 F.3d 456, 462 (6th Cir. 2017) (citing *Pickering v. Bd. of Educ.*, 391 U.S. 563, 56 (1968)). Although "the First Amendment protects a public employee's right, in certain circumstances, to speak as a citizen addressing matters of public concern," *Garcetti v. Ceballos*, 547 U.S. 410, 417 (2006), it does not turn every "employment decision [into] a constitutional matter." *Connick*, 461 U.S. 138, 143 (1983).  As a public employee, Godfrey must make additional showings to demonstrate that her conduct was protected. *Leary v. Daeschner*, 228 F.3d 729, 737 (6th Cir. 2000). First, she must have spoken on a matter of public concern. *Connick*, 461 U.S. at 143.  Second, she must have spoken as a private citizen and not as an employee pursuant to her official duties. *Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006).  Third, Godfrey must show that her interest in commenting on the matter of public concern outweighed the interests of the County, as an employer, in promoting the efficiency of the public services it performs through its employees. *Pickering v. Bd. of Ed. Of Twp. High Sch. Dist. 205, Will Cty., Illinois,* 391

4

U.S. 563, 568 (1968).[3]  Ultimately, whether Godfrey's speech was protected is a question of law

for the Court. *Mayhew v. Town of Smyrna, Tennessee*, 856 F.3d 456, 464 (6th Cir. 2017).

**A.** **Godfrey Did Not Allege a Plausible Claim of First Amendment Retaliation.**

A motion for judgment on the pleadings under Rule 12(c) attacks the sufficiency of the

pleadings and is reviewed under the same standard applicable to a motion to dismiss under Rule

12(b)(6). *Ziegler v. IBP Hog Mkt.*, 249 F.3d 509, 511–12 (6th Cir.2001). While a complaint need

not contain "detailed factual allegations," its "[f]actual allegations must be enough to raise a right

to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007).

In reviewing the motion, a court must construe the complaint in the light most favorable to

the nonmoving party, accept all factual allegations as true, and make reasonable inferences in favor

of the non-moving party. *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue

Shield,* 552 F.3d 430, 434 (6th Cir.2008). The Court is not required, however, to accept as true

mere legal conclusions unsupported by factual allegations. *Ashcroft v. Iqbal,* 556 U.S. 662, 129

S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (*citing Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555,

127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).

In order to state a claim for First Amendment retaliation, Godfrey must allege facts

sufficient to establish that Commissioner Fuda took an adverse action against her that was

sufficient to deter a person of ordinary firmness from continuing to engage in similar conduct.

*Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc).  Godfrey's complaint fails to

meet this basic pleading standard.  Her allegations of retaliation were confined to a single statement

that Commissioner Fuda "began to harass, torment, bully, and act abusively toward Godfrey" after

---

[3]  Defendant does not concede this last prong, but it is unnecessary to address the third prong
because Godfrey cannot meet the first two.

she spoke.  (Complaint ¶ 6.)  This conclusion, unsupported by any operative facts, is insufficient to state a plausible claim for relief.  *Lillard v. Shelby Cnty. Bd. of Educ.,* 76 F.3d 716, 726–27 (6th Cir.1996) ("[C]onclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under section 1983.") (affirming dismissal of First Amendment retaliation claim because complaint, which alleged that coach/teacher "penaliz[ed] students in their grades and their participation on his teams" in response to their complaints about him, stated "nothing more than the barest of conclusory allegations of unspecified retaliation").  As a result, Godfrey's complaint should be dismissed because it fails to state a claim for which relief may be granted.

> **B.      Godfrey's First Amendment Retaliation Claims Fails because She Did Not Speak on a Matter of Public Concern or as a Private Citizen.**

> **1.      Godfrey Did Not Speak on a Matter of Public Concern.**

Even if the Court concludes that Godfrey's complaint contained sufficient factual allegations to state a claim for First Amendment retaliation, her complaint should be dismissed because Godfrey did not speak on a matter of public concern.

"Speech involves matters of public concern when it can be fairly considered as relating to any matter of political, social, or other concern to the community, or when it is a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public." *Lane v. Franks*, 573 U.S. 228, 134 S.Ct. 2369, 2380 (2014). For example, "[e]xposing governmental inefficiency, mismanagement, or misappropriation of public money are matters "of considerable public significance." *Stinebaugh v. City of Wapakoneta*, 630 F. App'x 522, 527 (6th Cir. 2015) (quoting *Garcetti,* 547 U.S. at 425).  By contrast, "internal personnel disputes or complaints about an employer's performance" are not matters of public concern. *Brandenburg v. Hous. Auth. of Irvine*, 253 F.3d 891, 898 (6th Cir. 2001).  *See also*, *Cockrel v. Shelby County*

*School Dist.*, 270 F.3d 1036, n. 5 (2001) ("an employee grievance or other private dispute" generally will not constitute a matter of public concern); *Jackson v. Leighton*, 168 F.3d 903 (6th Cir. 1999) (internal office politics is not a matter of public concern).  "The First Amendment does not require a public office to be run as a roundtable for employee complaints over internal office affairs," *Connick*, 461 U.S. at 149, so "[f]ederal courts have long been instructed not to constitutionalize the employee grievance so as to avoid compromising the proper functioning of government offices." *Naghtin v. Montague Fire Dist. Bd.*, 674 F. App'x 475, 479 (6th Cir. 2016) (internal citations and quotations omitted).

To determine whether an employee's speech touched on a matter of public concern, courts must "examine both the content and the context of the employee's statement."  *Brown v. City of Trenton*, 867 F. 2d 318, 322 (6th Cir. 1989).  If, having done so, the Court finds "that the employee's personal interest *qua* employee predominates over any interest he might have as a member of the general public," the Court must not intercede.  *Id.*  When a plaintiff's speech does not address a matter of public concern, no further inquiry is necessary. *Banks v. Wolfe County Bd. of Ed.*, 330 F.3d 888, 892–93.

There can be no doubt that Godfrey's personal interest predominated in her response to Commissioner Fuda.  Godfrey responded to a direct question from Commissioner Fuda about whether he had ever "yelled" at her at work.  She answered that he had yelled at her once and volunteered that he had spoken to her several times through gritted teeth.  Godfrey's response to Commissioner Fuda's question was not a "subject of general interest and of value and concern to the public," *Lane v. Franks*, 573 U.S. 228, 241 (2014) (citation and internal quotation marks omitted), or one "about which information is needed or appropriate to enable the members of society to make informed decisions about the operation of their government," *Brandenburg*, 253

7

F.3d at 898 (citation and internal quotation marks omitted). Godfrey was not complaining that Commissioner Fuda had discriminated against or harassed her based on a protected class.  Her comments were nothing more than an indictment of office morale -- "the quintessential employee beef: [my boss was mean to me]." *Haynes v. City of Circleville, Ohio*, 474 F.3d 357, 365; *Naghtin v. Montague Fire Dist. Bd*., 674 F. App'x 475 (6th Cir. 2016) (rejecting argument that office morale is a public concern).

### 2.    Godfrey Did Not Speak as a Private Citizen.

Godfrey's speech also was unprotected because she was not speaking as a private citizen, but rather pursuant to her duties as a public employee.  So even if she had been speaking on a matter of public concern (and she was not), her First Amendment claim would fail.  *Weisbarth v. Geauga Park Dist.*, 499 F.3d 538, 545 (6th Cir. 2007) ("*Garcetti* stands for the proposition that even employee speech addressing a matter of public concern is not protected if made pursuant to the employee's official duties….")

The Sixth Circuit has "identified several factors to consider when determining whether an employee's speech was made pursuant to h[er] official duties, including 'the impetus for her speech, the setting of her speech, the speech's audience, and its general subject matter.  Other relevant, but not dispositive, factors include where the speech occurred—inside or outside of the workplace—and if the speech is ordinarily within the scope of the speaker's duties," including ad hoc or *de facto* duties.  *Stinebaugh v. City of Wapakoneta*, 630 F. App'x 522, 527 (6th Cir. 2015) (internal citations and quotations omitted).

Godfrey's speech occurred in the workplace. She was present for the board meeting because, as clerk, she was statutorily required to attend.  (R.C. §§ 305.10, 305.11, 305.13.)  The impetus for her speech was a direct question from a commissioner about his treatment of her as

8

clerk.  (Complaint ¶ 5.)  Godfrey answered him in her role as an employee of the board, and her response was directly related to the performance of her duties. In every respect, her speech that day owed its existence to her public employment.  *Fox v. Traverse City Area Pub. Sch. Bd. of Educ.*, 605 F.3d 345, 349 (6th Cir. 2010) (teacher's complaint to supervisor about class size owed its existence to her responsibilities as a special education teacher, so she was not speaking as a private citizen and her speech was not protected).

The content and context of Godfrey's speech was analogous to that of the park ranger in *Weisbarth* who was terminated after telling a consultant, who had been hired by her employer to evaluate the department, that the department had serious morale and performance problems. Although the park ranger argued that it was not within her official job duties to have made those comments, the Sixth Circuit concluded that her interview with the consultant was an "ad hoc" responsibility that arose while carrying out her official duties.  The fact that the park ranger was fired for participating in an interview expressly requested by her employer, though ironic and perhaps unfair, "simply serve[d], if anything, to render Weisbarth's actions more closely linked to her official duties."  *Id.* at 544-545.

Such was the case with Godfrey.  Her comments may not have fallen squarely within her "official" job duties as clerk, but she had an *ad hoc* duty as an employee of the board to respond to the question asked by Commissioner Fuda during a board meeting.  Thus, her speech was not protected.  *Fox v. Traverse City Area Pub. Sch. Bd. of Educ.,* 605 F.3d 345, 348 (6th Cir. 2010) ("Speech by a public employee made pursuant to *ad hoc* or *de facto* duties not appearing in any written job description is nevertheless not protected if it 'owes its existence to [the speaker's] professional responsibilities.'"); *see also*, *Handy-Clay v. City of Memphis, Tenn*., 695 F.3d 531, 541-42 (6th Cir. 2012) (public record coordinator's comments about how department restructuring

impeded her ability to process public record requests, and her accusation that city hall preferred to conceal public information, was unprotected by the First Amendment because "her complaints were directly related to her alleged job responsibilities, and, thus, her speech was made in her capacity as an employee and not as a private citizen.")

"When a public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest, absent the most unusual circumstances, a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior. *Connick,* 461 U.S. at 147, 103 S.Ct. 1684.  Because Godfrey's comments to Commissioner Fuda did not touch on a matter of public concern and were not made by Godfrey as a private citizen, her complaint fails to state a claim for which relief may be granted.  *See e.g., Kocher v. Larksville Borough*, 926 F. Supp. 2d 579 (M.D. Pa.), *aff'd,* 548 F. App'x 813 (3d Cir. 2013) (police officer was not speaking on matter of public concern when wrote incident report describing a confrontation with the mayor during which mayor allegedly mistreated and yelled at him in public, while the officer was in uniform).

### C.    COMMISSIONER FUDA IS ENTITLED TO QUALIFIED IMMUNITY.

A government official sued under § 1983 may raise the affirmative defense of qualified immunity.  Qualified immunity protects government officials from civil liability so long as their conduct "'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' " *Pearson v. Callahan,* 555 U.S. 223, 231, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). Qualified immunity protects "all but the plainly incompetent or

those who knowingly violate the law." *Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986).

When a defendant asserts qualified immunity, the burden shifts to the plaintiff to show that the defense is unwarranted.  At the pleadings stage, the plaintiff must show that her complaint alleges facts which, when construed in her favor, are sufficient to show that (1) the defendant violated the plaintiff's constitutional right and (2) the right was clearly established.  The Court may decide which prong to consider first.  *Handy-Clay v. City of Memphis*, No. 10-2927-STA-TMP, 2013 WL 2948442, at *4 (W.D. Tenn. June 14, 2013).

For the same reasons discussed in Sections A and B, *supra*, Godfrey cannot meet her burden to surmount Commissioner Fuda's defense of qualified immunity. The pleadings fail to show that Commissioner Fuda violated a clearly-established constitutional right.

### 1.    Godfrey's Alleged First Amendment Right to Speak Publicly About a Personal Work Complaint Was Not Clearly Established.

For a right to be clearly established for purposes of qualified immunity, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Clemente v. Vaslo,* 679 F.3d 482, 490 (6th Cir.2012) (quoting *Anderson v. Creighton,* 483 U.S. 635, 640 (1987)).  The plaintiff is not required to cite the court to "a case directly on point [with the instant case], but existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al–Kidd,* 563 U.S. 731, 741, 131 S.Ct. 2074, 179 L.Ed.2d 1149 (2011).

To Defendant's knowledge, there is no case within this circuit that would have put Commissioner Fuda on notice that Godfrey had a First Amendment right to air her personal grievance with him during a public board meeting.  In fact, existing case law compels the opposite conclusion.  But even if Godfrey can find a case or two that suggests otherwise, the point is that

11

Godfrey's right was not clearly established.  As a result, Commissioner Fuda is entitled to qualified immunity for any alleged retaliation.

> ### 2.  Godfrey Failed to Allege that Commissioner Fuda Violated Her First Amendment Right.

Godfrey claims that Commissioner Fuda violated her First Amendment rights by retaliating against her for her speech.  She alleges that "subsequent to the aforementioned public meeting of the Trumbull County Commissioners, Fuda began to harass, torment, bully and act abusively toward Godfrey."  (Complaint ¶ 6.)  The problem is that Godfrey did not plausibly plead that Commissioner Fuda retaliated against her because there are no factual allegations to support her conclusory assertions that he harassed, tormented, bullied and acted abusively toward her.  In the absence of such allegations, Godfrey's complaint fails to give rise to the necessary inference that Commissioner Fuda injured her in a way "likely [to] chill a person of ordinary firmness from" engaging in similar conduct.  *Ctr. for Bio-Ethical Reform, Inc.,* 477 F.3d at 821.  This is yet another reason why Commissioner Fuda is entitled to qualified immunity.

## III.  CONCLUSION

For several, independently-sufficient reasons, Godfrey's complaint fails to state a claim for relief under the First Amendment.  Not only are the factual allegations of her complaint insufficient to plead a plausible claim of retaliation, her speech was unequivocally unprotected as a matter of law.  Alternatively, to the extent that there was any ambiguity about whether Godfrey's speech was entitled to First Amendment protection (which Defendant denies), Commissioner Fuda is entitled to the benefit of qualified immunity.  For all of these reasons, Defendant respectfully requests that Godfrey's complaint be dismissed with prejudice and at Godfrey's costs.

Respectfully submitted,

MAZANEC, RASKIN & RYDER CO., L.P.A.

*s/Kathleen M. Minahan*
KATHLEEN M. MINAHAN  (0064989)
100 Franklin's Row
34305 Solon Road
Cleveland, OH  44139
(440) 248-7906
(440) 248-8861 – Fax
Email:    kminahan@mrrlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on March 21, 2022, a copy of the foregoing Motion for Judgment on the Pleadings was filed electronically.  Notice of this filing will be sent to all registered parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

*s/Kathleen M. Minahan*
KATHLEEN M. MINAHAN  (0064989)
*Counsel for Defendant Frank Fuda*